IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 19, 2021

## JOSE ORTIZ, JR. v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Montgomery County
No. 41301368    Jill Bartee Ayers, Judge**

---

### No. M2020-01642-CCA-R3-PC

---

The petitioner, Jose Ortiz, Jr., appeals the denial of his petition for post-conviction relief, which petition challenged his convictions of child abuse and aggravated sexual battery, alleging that he was deprived of the effective assistance of counsel. Discerning no error, we affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Gregory D. Smith (on appeal), and H. Reid Poland, III (at hearing), Clarksville, Tennessee, for the appellant, Jose Ortiz, Jr.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Assistant Attorney General; John W. Carney, Jr., District Attorney General; and Arthur F. Bieber, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

In March 2018, a Montgomery County jury convicted the petitioner of child abuse and aggravated sexual battery for offenses against his 11-year-old step-daughter, and the trial court imposed an effective eight-year sentence. *State v. Jose Ortiz*, No. M2016-02457-CCA-R3-CD, 2018 WL 378402, at *1 (Tenn. Crim. App., Nashville, Aug. 6, 2018). In affirming the petitioner's convictions on direct appeal, this court summarized the trial evidence:

> The proof adduced at trial, taken in the light most favorable to the State, revealed that upon returning home after taking the victim's mother to work, the victim's siblings went

into the living room to watch television, and the victim went into the kitchen. As the victim was making a sandwich, the [petitioner] stood behind her and touched her front and back private areas. The victim took the sandwich to her room and later returned the empty plate to the kitchen. While she was walking back to her room, the [petitioner] pushed her into her mother's bedroom and onto the bed. He kissed and sucked on her neck, causing hickies, then he pulled down her sweatpants and underwear. He touched "[k]ind of both" the inside and outside of her front private part, "like almost there but like not really into there." Later that evening, the [petitioner] took the victim and her siblings to Walmart and bought makeup to conceal the marks on her neck. After the victim told her mother about the incident, the victim was examined by . . . a pediatric nurse at Our Kids. [The nurse] took a swab from the victim's neck, which tested positive for the [petitioner's] saliva.

*Id.* at *9.

With the assistance of counsel, the petitioner filed a timely petition for post-conviction relief, arguing that trial counsel failed to call the petitioner's wife as a trial witness, failed to adequately cross-examine the victim, and failed to seek the services of a DNA expert.

At the October 2020 evidentiary hearing, the petitioner testified that he told trial counsel "[t]wo or three times" that he wanted to call his wife, the victim's mother, as a witness but that counsel did not do so. The petitioner believed that his wife had the victim fabricate the allegations against him because he had threatened to divorce her, and "[s]he wanted to get her immigration visa." He explained that his wife was undocumented at the time and that if they had gotten a divorce, his wife would have to "go back to Mexico probably." The petitioner understood that his wife would have been an adverse witness to his defense but said that without her testimony, he "couldn't prove anything on my side that I didn't do this crime." He said that he was "under the impression that she was going to be" at trial because trial counsel "told me she has to be there."

The petitioner testified that he did not learn that the State had DNA evidence until three or four days before trial and that, although trial counsel had previously told him that there was no DNA evidence, trial counsel said, "'Well, apparently they do have DNA.'" The petitioner expressed to trial counsel that he wished to have a DNA expert witness and that counsel said "give me this much money, . . . [and] we can work something

out," but the petitioner could not afford the services at that time. The petitioner said that he wanted his own DNA expert because the State's expert testified that the DNA analysis was inconclusive and another expert would have cleared up the issue. He believed that because the State's witness was an expert, her testimony was accepted as true by the jury and went unchallenged because he did not have his own expert.

The petitioner said that trial counsel did not adequately cross-examine the victim, noting that counsel asked "only, like, three or four questions" and did not ask any of the questions that the petitioner wanted him to. During the trial, the petitioner "was like poking him or pulling his suit" to alert counsel that he had other questions, but counsel "told me, 'We're very limited to the questions we need to ask.'" The petitioner said that he wanted trial counsel to ask the victim whether she had a boyfriend, why she believed the petitioner would commit the offenses "in front of my other kids," and whether her mother had "talked her into" bringing false allegations against him. The petitioner believed that the victim's mother convinced her to lie about him. He reiterated that he wanted counsel to question the victim's mother about whether she fabricated the story and encouraged the victim to lie.

The petitioner also said that trial counsel could have better cross-examined the State's other witnesses. He believed that trial counsel should have asked the detective more questions about the process of his investigation. His impression of counsel during trial was that "he was just trying to get it done," noting that counsel did not object to certain things. The petitioner believed that "if [trial counsel] would have spent more time on my case, I think I would have a better outcome out of it." He claimed that trial counsel did not review the victim's pretrial statements with him and said that he did not think that counsel explored the inconsistencies in her statements. He explained that each time the victim told her story "[f]rom one person to another," "her story changed." He acknowledged that he and trial counsel reviewed a transcript of a video recorded interview of the victim but said, "I only [saw] paper. I didn't see the video."

During cross-examination, the petitioner could not say what he believed the detective could have said that would have benefited his defense, stating, "I don't know if he would have helped me on that." He acknowledged that the victim's mother's testimony would have strengthened the State's case and that, although he wanted counsel to ask her whether she fabricated the story to obtain a U visa,[1] he did not expect her to admit to such conduct. He also did not expect the victim to admit that she was lying "because she was told what to do."

---

[1] A "U visa" refers to nonimmigrant status for aliens who are victims of certain crimes and their qualifying family members. *See* 8 U.S.C. § 1101(a)(15)(U); 8 C.F.R. § 214.14(a)(9)-(10), (b).

The petitioner acknowledged that the DNA evidence at trial was inconclusive but explained that he wanted an expert to testify that the DNA analysis "could be manipulated."

On redirect examination, the petitioner said that he believed the testimony of the victim's mother would have benefited his case more than it would have harmed it.

Trial counsel testified that he did not recall a specific conversation with the petitioner about calling the victim's mother as a witness but said that he "would have advised him that I would not call [her] as a witness" because "I can't control what she says." He said that "the concept of the U visa was our primary defense." He argued to the jury that if the victim's mother did not concoct the story in an effort to get a U visa that the State would have called her to rebut that assertion. Trial counsel said that he believed his argument was "a more effective tool" than "calling her and hoping that she admits that . . . this is all a ruse." Counsel believed that it was "extremely unlikely" that the victim's mother would have testified that she made up the story.

Trial counsel said that he did not believe the State's DNA evidence to be "anything conclusive or overwhelming against [the petitioner's] position." Counsel said that "[less] is more" when trying to establish reasonable doubt. He explained, "[I]f the DNA is inconclusive, I'm not going to hire an expert and try to help the State. . . . [I]f I get an expert report and that said it was [the petitioner], then I'd have to provide that to the State which would further compromise [the petitioner's] position."

Trial counsel testified that cross-examining a child "is different than cross-examining . . . adults" because "hammer[ing] down a juvenile" can turn the jury against you. Counsel believed that his cross-examination of the victim was appropriate and that he pointed out the inconsistencies in her various pretrial statements.

In its written order denying post-conviction relief, the post-conviction court found that because the victim's mother "had no personal knowledge of the incident" and because trial counsel "could not be sure of what her testimony might have been," trial counsel did not perform deficiently by declining to call her as a witness. The court also found that the petitioner failed to establish what additional beneficial information could have been elicited on cross-examination of the victim or other State witnesses. The court concluded that counsel's strategy to not seek further DNA testing of the evidence was reasonable.

In this timely appeal, the petitioner reasserts his arguments that trial counsel performed deficiently by failing to call the victim's mother as a witness, by failing to adequately cross-examine the victim, and by failing to seek additional DNA analysis.

We view the petitioner's claim with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

Before a petitioner will be granted post-conviction relief based upon a claim of ineffective assistance of counsel, the record must affirmatively establish, via facts clearly and convincingly established by the petitioner, that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and that counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When considering a claim of ineffective assistance of counsel, a reviewing court "begins with the strong presumption that counsel provided adequate assistance and used reasonable professional judgment to make all significant decisions," *Kendrick v. State*, 454 S.W.3d 450, 458 (Tenn. 2015) (citation omitted), and "[t]he petitioner bears the burden of overcoming this presumption," *id.* (citations omitted). We will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Here, we agree with the post-conviction court that trial counsel's decisions to not call the victim's mother as a witness and to not seek further DNA testing were reasonable. Furthermore, the petitioner failed to establish what the mother's testimony would have been because he did not call her at the evidentiary hearing. *See Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990) ("When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing."). Similarly, he did not present evidence of additional DNA analysis, and we will not speculate as to what additional testing would have revealed. Finally, the petitioner has failed to show what additional beneficial evidence could have been elicited from the victim on cross-examination. Indeed, the petitioner acknowledged that he did not expect the victim to admit that the allegations were fabricated. Moreover, we do not believe that evidence of the victim's having had a boyfriend at the time of the offenses would have changed the outcome of the trial. Consequently, the petitioner has failed to establish that he is entitled to post-conviction relief.

Accordingly, the judgment of the post-conviction court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE